## Charles L. Currier v. George W. Kretzinger et al.

1. FINDINGS OF THE TRIAL COURT—*When Final.*—On a bill for an accounting, the question as to what was a fair allowance to one of the parties for his time and expenses while employed about the business, was for the trial court upon the evidence, and its decision is final.

2. INTEREST—*On Money Received.*—Under Sec. 2, Ch. 74, R. S., entitled "Interest," it is proper to allow interest on money received to the use of another and retained without the owner's knowledge.

**Bill for an Accounting.**—Error to the Circuit Court of Cook County; the Hon. WILLIAM G. EWING, Judge, presiding. Heard in this court at the March term, 1895. Affirmed. Opinion filed April 4, 1895.

DENT & WHITMAN, with L. S. HODGES, attorneys for plaintiff in error.

TENNEY, McCONNELL & COFFEEN, attorneys for defendants in error.

MR. JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

These parties made this agreement:

"Memorandum of agreement, made and entered into between C. L. Currier, party of the first part, and G. W. & J. T. Kretzinger, parties of the second part, witnesseth:

Whereas, some time in the month of July, 1885, said parties hereto obtained for sale certain ranch properties, which they then and there agreed to unite and co-operate with each other in attempting to procure the sale thereof, in the London market, and thereafter to that end, said first party entered into certain contracts with Hass and Haley, and with George W. McCrary, and made certain advances to pay the expenses of J. T. Kretzenger, one of the parties of the second part, to London, to negotiate the sale of said properties, and agree to make such further advances as may be necessary in the premises.

And whereas, said parties hereto and each of them have assisted and rendered various services, and contributed all possible aid they or either of them could render in seeking to promote and consummate said sales, and agree to continue their efforts in this behalf.

And whereas, the parties hereto desire to form themselves into a syndicate for the purpose of securing mining and ranch properties, and farming and other lands for sale, intending to include all kinds of property, both real and personal, that are salable in the market in London or elsewhere.

Therefore, in consideration of the premises, and for the purpose of defining the interest of the parties hereto in the proceeds that may come to them, or either of them, or the profits that may be realized from said sale, or the sale or sales of any property made by either of them, it is agreed that all the proceeds or profits realized from the sale or sales of any of such properties that have heretofore been negotiated, made and consummated, or that may hereafter be negotiated, made or consummated, said first party shall receive one-third and the second party two-thirds thereof.

This contract shall include any moneys, stock or other consideration heretofore paid or agreed to be paid, or that may hereafter be received by either party to this contract, in consideration of any aid rendered by either party to this contract in negotiating or consummating such sale.

This contract is to continue with full force and effect for one year from and after date hereof.

It is further agreed and understood that after the first proceeds have been received as above contemplated and provided, the said first party shall contribute one-third of the expenses and the said second party two-thirds of the expenses, and that either party hereto who may be absent from the city of Chicago attending to the business contemplated by this agreement, shall receive a reasonable compensation for such time so employed.

Witness the hands and seals of the parties hereto this tenth (10th) day of April, A. D. 1886.

CHARLES L. CURRIER,          [SEAL.]<br>
G. W. & J. T. KRETZINGER,    [SEAL.]

. The within contract is hereby extended one year from April 10, 1887.          G. W. & J. T. KRETZINGER.

CHARLES L. CURRIER."

Thereafter Joseph T. Kretzinger was a party to this agreement:

"LAW OFFICE OF HODGES & SHIPPEN, 59 PORTLAND BLOCK,
CHICAGO, Sept. 26, 1887.

We, the undersigned, enter into the following agreement together, to-wit: C. L. Currier and A. C. Reed hereby agree to endeavor to secure a loan for Harvey Wells, of Wellston, O., and if they are successful we hereby agree to divide equally between L. S. Hodges, J. T. Kretzinger, C. L. Currier and A. C. Reed the sum of twenty-five thousand dollars, and C. L. Currier and A. C. Reed shall be entitled to keep for themselves any bonus of lands or other properties that they may be able to secure in this transaction over and above this twenty-five thousand dollars.

CHAS. L. CURRIER.
A. C. REED.
L. S. HODGES.
J. T. KRETZINGER."

The negotiation contemplated by this last agreement was so successful that the plaintiff in error received under it $12,500, and Joseph T. Kretzinger $5,000.

The defendants in error filed this bill to compel, and have a decree that the plaintiff in error pay to them the excess which he has retained over one-third of these two sums, less such sum as should be allowed to him for expenses and compensation for his time when absent from Chicago attending to the business. That sum has been fixed below at $1,250. The $25,000 which the second agreement implies would be received as commissions on the loan for Wells, was at last only $20,000, and the extra $7,500 which Currier obtained, was in stock, which he sold to Reed for that sum and did not report it to the Kretzingers.

Standing only on those agreements it is clear that Joseph T. Kretzinger could have no claim upon Currier for any part of what the latter agreement calls "a bonus;" and, therefore, whatever might be the rights of George W. Kretzinger against Currier, they could not be enforced under a bill in which both Kretzingers were complainants.

Currier v. Kretzinger.

The brief of the plaintiff in error says:

" MAY IT PLEASE THE COURT:

The controlling question in this case is, are the parties to this controversy governed in their relations to the 'Wellston transaction' by the contract of April 10, 1886, or that of September 26, 1887 ? "

The Kretzingers both testified that from the making of the second agreement at Hodges' office, Currier and Joseph T. Kretzinger went to the office of the Kretzingers, and it was then not so much agreed as explicitly stated, that the second agreement had no reference to or effect upon, the relations of these parties; and Joseph T. Kretzinger further testified that the first agreement was intentionally by him and Currier, kept from the knowledge of Reed and Hodges. Reed testified that Currier asked him not to mention the "bonus" to Kretzingers, Currier thinking possibly he might be called upon to divide it under the original contract.

The testimony of Currier, in opposition to what I have recited, still leaves the preponderance of evidence with the defendants in error and supports the finding of the Circuit Court in their favor upon the question quoted from the brief. Some complaint is made of fraud, as the brief calls it, upon Hodges, in concealing from him the division Currier was to make of the "bonus." How Hodges could be injured by anything that Currier chose to do with what, as between Currier and Hodges, was the property of Currier only, does not appear. Whether $1,250 was a fair allowance to the defendant in error for his time and expenses was a question upon the evidence upon which the decision of the Circuit Court is final. Upon the amount found to be due to the Kretzingers from Currier, the court allowed interest at five per cent from the time Currier received the $7,500, which is in accordance with Sec. 2, Ch. 74, " Interest," allowing interest " on money received to the use of another and retained without the owner's knowledge."

There is no error and the decree is affirmed.